UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LORENZO WILSON, | ) | |
|    Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 15-4078 |
| | ) | |
| JAMES RUNDLE, et.al., | ) | |
|    Defendants | ) | |

SUMMARY JUDGEMENT ORDER

This cause is before the Court for consideration of the Defendants' motion for summary judgment. [67].

I. BACKGROUND

The pro se Plaintiff alleges Dietary Manager James Rundle and Correctional Officer Anthony Buckley retaliated and conspired to retaliate against the Plaintiff at Hill Correction Center in September of 2013.

Plaintiff has filed a response to the dispositive motion and he disputes many of the facts alleged by Defendants. For instance, Defendant Rundle states he did not have authority to initiate an internal affairs investigation. (Def. Mot., Run. Aff., p. 1). Plaintiff disagrees, but his evidence is an affidavit from an inmate who worked in the Dietary Unit. The inmate says Defendant Rundle warned he would be fired if he broke any prison rules. (Plain. Resp., Gut. Aff., p. 1). This inmate statement does not dispute Defendant Rundle's involvement in internal affairs investigations. Therefore, the facts

1

below are taken from both the briefs and the supporting exhibits provided by the parties.[1]

## II. FACTS

In 2010, Plaintiff filed a lawsuit pursuant to 42 U.S.C.§1983 alleging Defendant Rundle violated his Eighth Amendment rights when he failed to provide a nutritionally adequate meal. *See Wilson v. Rundle, et.al.*, Case No. 10-1148; October 8, 2010 Merit Review Order. On May 12, 2016, summary judgment was granted for Defendant Rundle and Plaintiff's case was dismissed. *See Wilson v. Rundle, et.al.*, Case No. 10-1148; May 12, 2016 Summary Judgment Order.

Defendant Rundle was the Dietary Manager at Hill Correctional Center during the relevant time period of Plaintiff's current allegations. Defendant Rundle was responsible for the day-to-day operation of the kitchen and dining room area which included supervising 10 kitchen staff members and approximately 130 inmate workers. (Def. Mot., Run. Aff., p. 1).

However, Defendant Rundle did not have the authority to either initiate or request an internal affairs investigation of an inmate. Specifically, the Defendant maintains he had no involvement in the investigation of the Plaintiff. (Def. Mot., Run. Aff., p. 1).

---

[1] Plaintiff also continues to make reference to his claims against Lieutenant Vilt at Pontiac Correctional Center even though he is not a Defendant in this case and Plaintiff has pursued separate litigation against this individual. *See* February 8, 2018 Case Management Order.

Defendant Buckley was a Correctional Lieutenant working as an Intelligence Officer in the Intel Department at Hill Correctional Center in August of 2013. (Def. Mot., Buck. Aff., p. 1). However, Plaintiff maintains prior to this time, Defendant Buckley was responsible for job assignments. (Def. Mot., Plain. Aff., p. 12-13, 14) Plaintiff says Defendant Buckley assigned Plaintiff to work in the Dietary Unit in July of 2013. Due to his pending lawsuit against Dietary Manager Rundle, Plaintiff says he spoke with Defendant Buckley about his concerns sometime in August of 2013. (Def. Mot., Plain. Depo. p. 16, 20). Plaintiff wanted to keep his dietary job, but he was afraid Defendant Rundle would fire him without cause. (Def. Mot., Plain. Depo. p. 16). Defendant Buckley told the Plaintiff not to worry, if Defendant Rundle had a problem with Plaintiff working in the dietary unit, he would have informed Defendant Buckley. (Def. Mot., Plain. Depo. p. 16).

The parties agree Defendant Buckley was working as an Intelligence Officer in August of 2013. His job duties included investigating incidents at the facility. "For instance, I investigated claims of Security Threat Group (STG) activity, inmate fights, possession of illegal weapons, and any activity that constituted a violation of Department of Correction's rules." (Def. Mot., Buck. Aff., p. 1).

Defendant Buckley says he was directly responsible for gathering evidence, questioning and taking statements from witnesses, and writing reports. (Def. Mot., Buck. Aff., p. 1). However, the Defendant claims he had no authority to recommend or authorize the ultimate punishment for a disciplinary report. (Def. Mot., Buck. Aff., p.

2). In addition, Defendant Buckley says he could recommend the transfer of an inmate, but he did not have the authority to approve the transfer. (Def. Mot., Buck. Aff., p. 2).

On September 27, 2013, Defendant Buckley wrote a disciplinary report against the Plaintiff based on STG activity and "unauthorized organization." (Def. Mot., Buck. Aff., p. 2). The Defendant says he wrote the report after interviewing confidential informants who identified the Plaintiff as the leader of the STG group, the Gangster Disciples. (Def. Mot., Buck. Aff., p. 2). The informants further claimed the Plaintiff "was setting up a leadership 'structure' for the Gangster Disciples at Hill." (Def. Mot., Buck. Aff., p. 2).

Defendant Buckley states STGs are a threat to safety and security at a correctional center. For instance, the Defendant claims gangs can orchestrate riots and develop plans to overtake correctional staff. (Def. Mot., Buck. Aff., p. 2).

Defendant Buckley has provided a copy of the Plaintiff's disciplinary report. (Def. Mot., [68-1], p. 62-63). The first page indicates Plaintiff faces disciplinary charges "[a]s a result of an investigation conducted by Internal Affairs and the Intelligence Unit…" (Def. Mot., [68-1], p. 62). A box is marked for "temporary confinement" based on the charge and is signed by Shift Supervisor Wayne Steele. (Def. Mot., [68-1], p. 62). An additional box is also marked indicating the confinement was reviewed and approved with the signature of Lieutenant Charles Prentice. (Def. Mot., [68-1], p. 62). The document finally indicates it will be set for hearing with the Adjustment Committee. (Def. Mot., [68-1], p. 62). Plaintiff was ultimately served with a copy of the report on September 28, 2013. (Def. Mot., [68-1], p. 62).

4

The second page of the September 27, 2017 disciplinary report outlines the basis for the charges and it is written by Defendant Buckley. (Def. Mot., [68-1], p. 63). The Defendant indicates the Internal Affairs Department determined the Gangster Disciples were organizing by setting up housing unit leaders, enforcing the payment of dues, and holding meetings on the yard. (Def. Mot., [68-1], p. 63). As a result of this information, Internal Affairs, the Intelligence Unit, and the Tactical Team "conducted a group operation on September 27, 2013 that included interviews and searches." (Def. Mot., [68-1], p. 63). Defendant Buckley reports during the interviews, the Plaintiff was identified as an STG member who was helping to organize the Gangster Disciples within the facility.

Defendant Buckley then outlines the results of the interviews, but he does not clearly state who conducted each interview. For instance, Confidential Source (CS) #1 claimed Plaintiff was participating in meetings on the yard and handing out literature about the STG. CS #2 claimed the Plaintiff was responsible for setting up a "box" where STG members were directly to pay their dues. (Def. Mot., [68-1], p. 63).

CS #3 identified the Plaintiff as one of three inmates holding leadership positions within the Gangster Disciples. The inmate also alleged Plaintiff helped set up the leadership structure and participated in meetings on the yard and in the dietary unit. (Def. Mot., [68-1], p. 63).

Finally, CS #4 also claimed the Plaintiff was helping to set up the leadership structure for the Gangster Disciples at Hill and Plaintiff had passed "kites" or letters in

the dietary unit to help spread information to all housing units. (Def. Mot., [68-1], p. 63).

Defendant Buckley notes the confidential sources were able to positively identify the Plaintiff using institutional graphics.

> The information provided by the Confidential Sources corroborates each other along with previous information Internal Affairs and the Intelligence Unit has received, therefore the information is deemed reliable by this office. (Def. Mot., [68-1], p. 63).

The Defendants have also provided copies of internal documents showing Plaintiff's security risk was upgraded on September 26, 2013.(Def. Mot, [68-1], p. 67). The document is signed by two unidentified employees, and approved by the Warden and the Transfer Coordinator.

A September 27, 2013 Transfer Report signed by Counselor Sherry Shutlz and an unknown Supervisor indicates Plaintiff will be transferred to Pontiac Correctional Center based on this security designation score. (Def. Mot, [68-1], p. 66). The transfer was approved by the Warden and the Transfer Coordinator.

As a result, Plaintiff was removed from his cell on September 27, 2013. (Comp. [1], p. 9). In his original complaint, Plaintiff claims Defendant Buckley told him he was not going to talk to him about the disciplinary report, because he knew he would lie. (Comp. [1], p. 9). In his deposition, Plaintiff adds Defendant Buckley also said he was sending Plaintiff away from Hill Correctional Center. (Def. Mot., Plain. Depo., p. 27). Plaintiff was immediately taken to segregation, placed in a vehicle, and transported to Pontiac Correctional Center. (Comp., p. 9); (Def. Mot., Plain. Depo., p. 27).

6

The Adjustment Committee Hearing was held on October 2, 2013 at Pontiac Correctional Center. Committee Members Chad Brown and Aberardo Salinas reviewed the disciplinary report and found Plaintiff guilty of "Gang or Unauthorized Organizational Activity." (Def. Mot, [68-1], p. 68). Plaintiff received three months in segregation and a loss of privileges.

III. LEGAL STANDARD

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(B). If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. *Id.; Harvey v. Town of Merrillville*, 649 F.3d 526, 529 (7th Cir. 2011). "In a §1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. *Id.*

7

## IV. ANALYSIS

Defendants argue Plaintiff cannot demonstrate either Defendant retaliated against him in violation of his constitutional rights. "To prevail on his First Amendment retaliation claim, Gomez must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (internal quotation marks and citation omitted).

If a plaintiff makes a *prima facie* case by establishing these three elements, a defendant can still prevail if he presents evidence demonstrating he would have taken the same action even without a retaliatory motive. *See Mays v. Springborn,* 719 F.3d 631, 634 (7th Cir. 2013); *Greene v. Doruff,* 660 F.3d 975, 979 (7th Cir. 2011).

Plaintiff has adequately demonstrated he engaged in a protected activity when he filed a previous lawsuit against Defendant Rundle. However, Defendant Rundle states Plaintiff has not provided any evidence to demonstrate Defendant Rundle was involved in the investigation, the disciplinary report, the transfer, or the discipline received.

Plaintiff maintains Defendant Rundle had to know about the investigation because he had to replace Plaintiff when he was removed from his dietary job. (Plain. Resp., p. 10). It does not appear from the record hat Plaintiff was terminated from his job until the investigation was complete. Even if Plaintiff was removed earlier, there is

no evidence Defendant Rundle knew the basis of the investigation, or that the Defendant was involved in the investigation.

Plaintiff also argues since Defendant Rundle was head of the dietary department, he knew everything that happened in his department. Given the breadth of Defendant Rundle's responsibilities and the number of employees supervised, the Court cannot make this assumption.

Plaintiff argues a fact-finder could still infer Rundle retaliated against him because Plaintiff had a lawsuit pending against the Defendant and discussed it with Defendant Buckley shortly before he was investigated. Plaintiff specifically told Defendant Buckley about the pending lawsuit, and expressed fears that he might be fired. Plaintiff speculates Buckley and Rundle then came up with the plan to retaliate against the Plaintiff which resulted in the investigation, false disciplinary report, and transfer.

The Court first notes the record clearly demonstrates other individuals and departments were involved in the investigation of the Plaintiff and the Gangster Disciples within Hill Correctional Center. There is no evidence to suggest Defendant Buckley initiated the investigation, and there is no indication any information came from Defendant Rundle. In short, Plaintiff bases his claim on nothing more than his own hunch. *See Dace v. Smith-Vasquez*, 658 F.Supp.2d 865, 881 (S.D.Ill. Sept. 8, 2009)("Speculation based on suspicious timing alone does not support a reasonable inference of retaliation; instead, plaintiffs must produce evidence that somehow tie the adverse decision to the plaintiff's protected actions."); *Springer v. Durflinger,* 518 F.3d

9

479, 484 (7th Cir.2008) (speculation concerning retaliatory motives cannot create a genuine issue of material fact); *Borcky v. Maytag Corp.,* 248 F.3d 691, 695 (7th Cir.2001)("[i]n the absence of such evidence, we shall not impute a retaliatory motive.."); *Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013)(plaintiff's "speculation regarding the officers' motives cannot overcome the contrary evidence…").

Furthermore, while Defendant Buckley wrote the disciplinary report, there is no evidence to support Plaintiff's claim that Defendant Buckley, or Defendant Rundle for that matter, had the authority to transfer Plaintiff. And there is no evidence either Defendant had any involvement in the ultimate discipline imposed. Plaintiff again relies on his own speculation.

Even if Plaintiff could somehow demonstrate a *prima facie* case against both Defendants, there is abundant evidence in the record demonstrating all of the actions Plaintiff maintains were retaliatory would have happened anyway.

Two different investigatory units learned there was a possibility the Gangster Disciples were attempting to organize within the institution. An investigation was conducted which involved interviewing multiple confidential sources. Each source identified Plaintiff and told officers Plaintiff was instrumental in the efforts to organize the Gangster Disciples. Based on the evidence gathered, Plaintiff would have received a disciplinary ticket for attempting to organize a STG even without a retaliatory motive. *See Mays*, 719 F.3d at 634.

Plaintiff next argues the disciplinary ticket was a pretext, and the Defendants are lying to hide their retaliatory motives. However, Plaintiff presents scant evidence to

10

support this contention. Plaintiff says there are no incident reports verifying any of the specific activities alleged in the September 27, 2013 disciplinary report. However, there is no indication any correctional officer witnessed the events, and instead they were later verified by multiple confidential sources.

Plaintiff's claim is based on his own unsupported conclusion that all of the events had to be based on a retaliatory motive. However, this is insufficient to overcome a motion for summary judgment. *See Rockwell Automation, Inc. v. National Union Fire Insurance Co. of Pittsburgh, PA*, 544 F.3d 752, 757 (7th Cir. 2008) ("mere speculation or conjecture will not defeat a summary judgment motion"); *Hall-Bey v Hanks*, 93 Fed.Appx 977, 980 (7th Cir. 2004)("conclusory statements cannot sustain a non-movant's burden on summary judgment."); *Stagman v Ryan,* 176 F.3d 986, 995(7th Cir. 1999)("statements that are the result of speculation or conjecture or merely conclusory" do not meet requirements of Rule 56). The motion for summary judgment on Plaintiff's retaliation claim is granted as to both Defendants.

Plaintiff has one surviving claim alleging Defendants Buckley and Rundle conspired to retaliate against him. In order to succeed on this claim, Plaintiff must demonstrate: (1) the defendants had an express or implied agreement to deprive him of his constitutional rights, and (2) he was deprived of his constitutional rights by defendants' overt actions in furtherance of the agreement. *Williams v. Seniff,* 342 F.3d 774, 782 (7th Cir.2003); *Scherer v. Balkema,* 840 F.2d 437, 442 (7th Cir.1988). "While conspiracies are often difficult to prove, evidence used to support the claim cannot be

speculative" *Jellis v. Harrington*, 2017 WL 4253929, at *5 (S.D.Ill.,Sept. 26, 2017) *citing Beaman v. Freesmeyer*, 776 F.3d 500, 511 (7th Cir. 2015).

Plaintiff again relies on the same evidence and arguments made in support of his retaliation claim, sheer speculation unsupported by the record. The motion for summary judgment is also granted as to the conspiracy claim.

**IT IS THEREFORE ORDERED:**

1) Defendants' motion for summary judgment is granted pursuant to Federal Rule of Civil Procedure 56. [67]. The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiff.

2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *See also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

3) Defendants may request costs by filing a timely Bill of Costs with the documentation required by the Local Rules. *See* CDIL LR 54.1. However, Defendants are instructed to file their request as a Motion for Bill of Costs to allow the Court to consider Plaintiff's ability to pay.

4) Plaintiff must file a response to any motion for costs within 14 days of filing. Plaintiff is advised the burden is on the losing party to provide the Court with sufficient documentation to make this determination. *Rivera v City of Chicago*, 469 F.3d 631, 635(7th Cir. 2006) *quoting Chapman v. AI Transp.*, 229 F.3d 1012, 1039 (11th Cir.2000). This documentation should include evidence in the form of an affidavit or other documentary evidence of both income and assets, as well as a schedule of expenses. *Rivera*, 469 F.3d at 635. 631. Plaintiff should also provide his anticipated release date. The Court will then consider the amount of costs, the good faith of the losing party, and the closeness and difficulty of the issues raised by a case. *Id.* If Plaintiff does not provide a response to Defendants' motion for costs within 14 days after the motion is filed, the Court will consider the request for costs without input from the Plaintiff.

Entered this 8th day of February, 2018.

s/ Michael M. Mihm
_____
MICHAEL M. MIHM
UNITED STATES DISTRICT JUDGE